IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SAMUEL D. MAESTAS,

        Plaintiff,

vs.                                                     No. CIV 01-230 MV/LCS

JO ANNE B. BARNHART,[1]
**Commissioner,**
**Social Security Administration,**

        Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER came before the Court upon Plaintiff's Motion to Reverse or Remand the Administrative Decision (*Doc. 9*), filed September 28, 2001.[2] The Commissioner of Social Security Administration issued a final decision denying the Plaintiff his claim for a period of disability, disability insurance benefits and supplemental security income. The United States Magistrate Judge, having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, finds that the motion is not well-taken and recommends that it be DENIED.

---

[1]     Effective November 14, 2001, Jo Anne B. Barnhart was appointed to serve as Commissioner of Social Security. Pursuant to FED. R. CIV. P. 25 (d), Jo Anne B. Barnhart, Commissioner of Social Security, is substituted for Larry G. Massanari, Acting Commissioner of Social Security, as the defendant in this action.

[2]     On July 20, 2001, I issued an Order setting a briefing schedule in this case, requiring that Plaintiff serve a Motion to Reverse or Remand Administrative Agency Decision with supporting memorandum, that Defendant serve a response, and that Plaintiff serve any reply. The Plaintiff, appearing *pro se*, filed a letter stating reasons which this Court interprets as reasons to reverse or remand the Administrative Agency's decision. In acknowledgment of the Plaintiff's letter, the government filed its response. Since that time, the Plaintiff has not filed anything resembling a reply. Therefore, I will treat Plaintiff's September 28, 2001 letter as a Motion to Reverse or Remand Administrative Agency Decision and perform the appropriate review of the Administrative Law Judge's decision.

# PROPOSED FINDINGS

## I. PROCEDURAL RECORD

1. Plaintiff Samuel Maestas initially filed an application for a period of disability insurance benefits and supplemental security income with the Social Security Administration in June of 1995 alleging a disability since June 24, 1994. Plaintiff's application was denied at the initial level and at the reconsideration level. Plaintiff appealed the denial of his claim by filing a Request for Hearing by Administrative Law Judge (ALJ). A hearing was granted and conducted on September 10, 1996. On October 26, 1996, the ALJ issued an unfavorable decision. *See* R. at 247. The Plaintiff filed a timely request for review to the Appeals Council and the Council subsequently remanded the case to the Commissioner. *See* R. at 262.

> The order from the Appeals Council stated that
>
> [t]he hearing decision . . . . indicates that examining source opinion in Exhibit 38 has been adopted with respect to the claimant's ability to perform a full range of sedentary work. The examining source opinion in question, however, indicates that the claimant needs to change body positions every ½ hour and would be limited to 4 hours standing/walking and 4 hours sitting in an 8 hour day. This opinion evidence is not consistent with an ability to perform a full range of sedentary work, but this factor was not addressed or rationalized in the decision. *See* R. at 263.

The Council remanded the case in order for the ALJ to "give further consideration to the examining source opinion, pursuant to the provisions of 20 CFR 404.1527 and 416.927 and Social Security Rulings 96-2p and 96-5p and explain the weight given to such opinion evidence." *See* R. at 263.

2. A hearing was held on December 4, 1998. *See* R. at 453. ALJ Vanderhoof subsequently issued his decision on January 15, 1999. *See* R. at 11. In that decision, the ALJ made the following findings according to the sequential analysis set forth in 20 C.F.R.

§404.1520(a)-(f) and *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993): the claimant was engaging in work activities during the period under review. However, since this case is decided on the medical evidence and the claimant's medical condition, his work activity is not taken into consideration; the severity of the claimant's impairments had not met or equaled any of the impairments found in the Listing of Impairments, Appendix 1 to Subpart P, 20 C.F.R. §§404.1501-1599; claimant had a "severe" impairment or combination of impairments due to chronic right knee pain, left upper extremity degloving injury with reconstructive surgery and a wrist fusion; the claimant's subjective complaints and functional limitations, including pain were not supported by the evidence as a whole in the disabling degree alleged and therefore lacked credibility; and the claimant could not perform his past relevant work. *See* R. at 11-13. Because of these findings, the ALJ called a vocational expert and finally concluded that Mr. Maestas was not disabled and that he had retained the residual functional capacity which supports work activities not requiring lifting of more than 25 pounds occasionally throughout the day, which do not require the capacity for sitting more than three hours, walking more than five blocks and back, or standing for longer than ten minutes at a time, and which accommodate his severely decreased left had grip. *See* R. at 12.

3.  Thereafter, the Plaintiff filed a request for review on February 3, 1999 to the Appeals Council and submitted additional evidence. On January 26, 2001, the Appeals Council issued its decision denying his request for review and upholding the final decision of the ALJ. *See* R. at 5. The Plaintiff subsequently filed his complaint for court review of the ALJ's decision on February 27, 2001. (*Doc. 1*). Consequently, the issue before this Court is whether the Commissioner's December, 1998 decision is supported by substantial evidence and whether the

ALJ's decision was concluded according to the proper analysis as ordered by the Appeals Council.

## II. STANDARD OF REVIEW

4. The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *See Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Secretary of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (citation omitted)). A decision of an ALJ is not supported by substantial evidence if other evidence on the record overwhelms the evidence supporting the decision. *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

5. In order to qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity. *See* 42 U.S.C. §423(d)(1)(A); *see also Thompson*, 987 F.2d at 1486. The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. *See* 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *See Thompson*, 987 F.2d at 1487.

6. At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R.

Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *See id.*

### III. ADMINISTRATIVE RECORD

7. Although the Court has reviewed the record in its entirety, the following represents a summary of the relevant evidence within the record that pertains to the scope of this review.

8. The Appeals Council vacated the Commissioner's previous decision concerning the Plaintiff's application and remanded this case for the ALJ to further review the following examing source opinion. On August 31, 1995, the Plaintiff was seen by an orthopedic consultant, Theodore Ceraolo, M.D. *See* R. at 198. Dr. Ceraolo performed a complete physical examination of Mr. Maestas' right knee. *See* R. at 200. In the doctor's report, he stated that Mr. Maestas complained of "a deep dull aching pain starting just below the lower pole of his right kneecap . . . . The pain is aggravated by prolonged standing and prolonged walking and prolonged sitting or attempting to squat......The knee is also aggravated by lifting heavy weights." *Id*. Dr. Ceraolo concluded in his Medial Source Statement of Ability to do Work-Related Activities that the Plaintiff has no functional limitation with his hands, arms, or shoulders, but that carrying heavy loads for distances would aggravate his right knee. *See* R. at 206. The doctor also noted that Mr. Maestas needs to change body positions every ½ hour and would be limited to 4 hours standing/walking and 4 hours sitting in an 8 hour day. *Id*.

9. Thereafter, Mr. Maestas was in an automobile accident in July of 1997. *See* R. at 332. The Plaintiff sustained injuries to his left arm and underwent multiple surgeries. *See* R. at 324, 328,

5

and 332. In September of 1998, the Plaintiff was evaluated by one of his examining physicians, John M. H. Allen. *See* R. at 406. Dr. Allen noted that the patient complained of right knee and left arm problems. *Id*. The doctor stated that Mr. Maestas experienced "right knee pain on activity [lasting] up to 2 hours, [but] may be free of this for up to a day." *Id*. He also noted that his knee swells during activity and subsides during rest, that it does not lock, and that his knee problems have been static for about five years. *Id*. In addition to evaluating the Plaintiff's knee, Dr. Allen also examined the Plaintiff's upper extremities including his left arm. *See* R. at 407. There is nothing significant within the doctor's notes to indicate a limitation of the Plaintiff's arm movements. *Id*.

10. The following summary represents questions asked by the ALJ at Mr. Maestas' hearing on December 4, 1998. The Plaintiff testified that he stopped working as a maintenance man in June of 1997 because his employer started sending him to El Paso and he could not afford to travel the distance. *See* R. at 459. However, shortly after he stopped working, Mr. Maestas was involved in an accident where he injured his arm. *See* R. at 460. He stated that he does not take medication for his pain but that he uses a "TENS" unit for relief. *See* R. at 461. The Plaintiff testified that his daily activities included doing dishes, laundry, cooking, some grocery shopping, watching television, reading, helping children with homework, and fishing. *See* R. at 461-462, 466 and 467. Mr. Maestas also stated that he performs exercises everyday such as deep knee bending with ankle weights. *See* R. at 463.

11. In addition to Mr. Maestas' testimony, the ALJ called a vocational expert and posed the following hypothetical questions.[3] The first question posed the situation of a hypothetical

---

[3] The ALJ premised his questions with the Mr. Maestas' personal and educational history. The hypothetical individual was 37 years old, disabled from 1994, a high school graduate with two years of college education, and an associate's degree in waste water technology. *See* R. at 473-74.

6

individual who could lift and carry fifty pounds occasionally, twenty-five pounds frequently and uses a brace. *See* R. at 474. The VE stated that such an individual could return to his past relevant work as a cook, certified nurse, or maintenance. *See* R. at 474-75. The second question posed the situation of a hypothetical individual who could lift at maximum only twenty-five pounds, could sit a maximum of three hours at one time and could walk five blocks and return. *See* R. at 475. The VE stated that such an individual could not perform his past relevant work and that there could be no transferability of skills from his previous job. *Id*. However, the VE testified that this individual could perform light and semi-skilled work such as a general office clerk or a hotel desk clerk. *Id*. For the third and final question, the ALJ reminded the VE of the individual's need for a leg brace and added a left hand limitation. The ALJ posed the question of a hypothetical individual with a right hand grip of 110 pounds but a left hand grip of only ten pounds. *See* R. at 475-76. The VE stated that even with these limitations, the individual could still perform light and semi-skilled work. *See* R. at 476.

### III. DISCUSSION

12. The following discussion represents a review of the ALJ's December, 1998 decision and whether he performed the appropriate analysis as directed by the Appeals Council. Because the Plaintiff is proceeding *pro se*, he submitted an informal letter which this Court interprets as a Motion to Remand or Reverse. The Plaintiff includes within this letter two complaints which this Court interprets as two issues for review. Therefore, in addition to evaluating the aforementioned issue, I will pay particular attention to the ALJ's pain analysis and his RFC determination and whether the ALJ's findings are supported by substantial evidence.

### Appeals Council Remand Order

13. The Appeals Council remand order specifically vacated the Commissioner's previous

findings and ordered the ALJ to resolve the following issue:

> [t]he hearing decision . . . . indicates that examining source opinion in Exhibit 38 has been adopted with respect to the claimant's ability to perform a full range of sedentary work. The examining source opinion in question, however, indicates that the claimant needs to change body positions every ½ hour and would be limited to 4 hours standing/walking and 4 hours sitting in an 8 hour day. This opinion evidence is not consistent with an ability to perform a full range of sedentary work, but this factor was not addressed or rationalized in the decision. *See* R. at 263.

The examining source opinion the Appeals Council is referring to is a report made by an orthopedic consultant, Theodore Ceraolo, M.D. *See* R. at 198. Dr. Ceraolo concluded that the Plaintiff has no functional limitation with his hands, arms, or shoulders, but that carrying heavy loads for distances would aggravate his right knee. *See* R. at 206. The doctor also noted that Mr. Maestas needs to change body positions every ½ hour and would be limited to 4 hours standing/walking and 4 hours sitting in an 8 hour day. *Id*.

14.     The ALJ, in the Commissioner's most recent decision dated January 15, 1999, concluded that Mr. Maestas could not perform his past relevant work but that he had "retained a residual functional capacity which supports work activities not requiring lifting of more than 25 pounds occasionally throughout the day, which do not require the capacity for sitting more than three hours, walking more than five blocks and back, or standing for longer than ten minutes at a time, and which accommodate his severely decreased left had grip." *See* R. at 12. The ALJ specifically took into consideration Dr. Ceraolo's opinion, as documented by his RFC determination. *Id*. However, since Dr. Ceraolo's opinion was dated before the Plaintiff's July, 1997 accident where he sustained injuries to his left arm, the ALJ also took into consideration Dr. Allen's medical opinion, one of the Plaintiff's treating physicians. *See* R. at 12. After reviewing the record, the ALJ called a vocational expert and posed questions based on the opinions of these physicians. Therefore, I find that the ALJ made the

8

appropriate analysis as directed by the Appeals Council's remand order and made his determination based on the Plaintiff's examing physicians.

## ALJ's Assessment of the Plaintiff's Pain Condition

15. Plaintiff contends that the ALJ failed to perform the proper analysis of the Plaintiff's pain condition. The ALJ found that Mr. Maestas' "testimony of subjective complaints and functional limitations, including pain, was not supported by the evidence as a whole in the disabling degree alleged and therefore lacked credibility." *See* R. at 12.

16. In evaluating a claim of disabling pain, the appropriate analysis considers (1) whether there is objective medical evidence of a pain producing impairment, (2) whether there is a loose nexus between this objective evidence and the pain, and (3) whether, in light of all the evidence, both objective and subjective, the pain is in fact disabling. *See Glass v. Shalala*, 43 F. 3d 1392, 1395 (10th Cir. 1994) (citing *Luna v. Bowen*, 834 F. 2d 161, 163 (10th Cir. 1987)).

17. The ALJ properly applied these factors in this case. With respect to the Plaintiff's leg problems, the ALJ emphasized that Mr. Maestas alleged an onset of disability in June of 1994. However,

> his treating doctor indicated during his consultative clinical examination of the claimant in September 1995 that the claimant's surgery had been successful, and that he had not found it necessary to visit a doctor since January 1995. *See* R. at 12 . . . Although the claimant testified and has reported that he wears a knee brace all day every day, his doctor observed that there [are] no tan lines on his leg, that the claimant stated that he wears shorts all the time, and that he stated that he wears his knee brace outdoors. *See* R. at 24.

Furthermore, the record reveals that the Plaintiff was working with his leg problem up until he injured his arm. *See* R. at 459. The Plaintiff testified that he stopped working because of a reassignment not because of his disability. *Id*.

9

18. With respect to the Plaintiff's left arm injury, the ALJ noted that

> [t]he claimant states that since he sustained his left upper extremity injury in July 1997 he has been unable to sustain any work activity. However, the function of his dominant right upper extremity is normal, and he admits that he is able to lift as much as 25 pounds occasionally as indicated by his doctor, and he performs such daily household chores as cooking, shopping, and cleaning. He testified additionally that he takes his sons fishing. *See* R. at 24.

Although there are reports within the record of the Plaintiff's complaints of pain, the objective medical evidence simply does not support such complaints. In light of all the evidence, both objective and subjective, including the Plaintiff's own testimony which fails to support his complaints, the pain alleged is not disabling. *See Glass*, 43 F. 3d at 1395.

19. If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Secretary's decision stands and Plaintiff is not entitled to relief. *See e.g., Hamilton v. Secretary of Health & Human Servs.*, 961 F. 2d 1495, 1497-1500 (10th Cir. 1992). I find that the ALJ supported the Plaintiff's pain determination with substantial evidence. There is nothing in the record to contradict the evidence relied upon in the ALJ's opinion.

### Residual Functional Capacity

20. Plaintiff next argues that the ALJ erred in assessing his residual functional capacity (RFC). At step five, the ALJ determined that the Plaintiff was not disabled and that he had retained the residual functional capacity to perform at least light work. *See* R. at 12.[4] The ALJ relied not only on the vocational expert's opinion at the hearing, but also upon two medical source opinions. *See* R. at 198 and 406. The ALJ also stated in support of his RFC assessment that "the claimant

---

[4] Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, requires a good deal of walking, standing, or pushing and pulling when sitting is involved. SSR 83-10; 20 C. F. R. § 404.1567(b), 416.967(a) (1986).

performs such daily household chores as cooking, shopping, and cleaning. He testified additionally that he takes his sons fishing. *See* R. at 24.

21. The Plaintiff argues within his letter that he "still has constant pain to [his] right knee and left arm with loss of feeling to [his] arm and hand.. . . . Due to the deterioration of [his] arm and knee [he is] no longer able to perform the work [he] used to due [sic]. [He is] no longer able to stand, walk, or even sit for long periods of time. [He is] also starting to develop pain in [his] right arm and left knee due to the constant over use of them." (Pl.'s Sept. 28, 2001 Letter).

22. After reading the Plaintiff's letter and submissions along with the entire record, I find there is no medical evidence, besides the Plaintiff's comments, indicating he is unable to perform light level exertional work. In addition, the ALJ's question to the VE accommodated the Plaintiff's current condition. The question posed to the VE represented an individual who could lift at maximum only twenty-five pounds, could sit a maximum of three hours at one time, could walk five blocks and return, and maintained a right hand grip of 110 pounds but a left hand grip of only ten pounds. *See* R. at 475. The VE concluded that the individual could perform light and semi-skilled work such as a general office clerk or a hotel desk clerk. *Id*. Furthermore, the Plaintiff's daily activities exemplify a person who is capable of at least light work. For example, the Plaintiff's daily activities included doing dishes, laundry, cooking, some grocery shopping, watching television, reading, helping children with homework, and fishing. *See* R. at 461-462, 466 and 467.

23. After reviewing the record, not only does the Court find that the ALJ properly explained and predicated his RFC determination with substantial evidence, but the record supports the finding that Mr. Maestas is capable of a RFC of light work. There is nothing to the contrary in the record that would indicate otherwise. Thus, the ALJ properly assessed the Plaintiff's RFC and

supported his determination with sufficient evidence.

## RECOMMENDED DISPOSITION

The ALJ applied the correct legal standards and the decision is supported by substantial evidence. I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing (*Doc. 9*), filed September 28, 2001, be denied, the decision of the ALJ affirmed, and this case dismissed. Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to §636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**